IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BUILDERS BANK, an Illinois State )
Chartered Bank, )
                                    )
             Plaintiff, )
                                    )
             vs. )    No. 05 C 1449
                                    )
KEELEY MEGARITY, )
                                    )
             Defendant. )

## MEMORANDUM OPINION AND ORDER

Plaintiff Builders Bank brings this action against defendant Keeley Megarity alleging that Megarity is liable as guarantor for the interest and fees due on certain notes. Builders now moves for summary judgment. For the reasons stated herein, we deny the motion in part and grant the motion in part.

## BACKGROUND

The parties agree on the following facts. Builders Bank loaned Redwood Gardens Apartments, Inc. and Woodland Forest Apartments, L.P. approximately $13 million. Keeley Megarity, a general partner in both organizations, guaranteed the loans. The loans went into maturity default in October 2004, and on November 9, 2004, Builder's sought payment from Megarity as guarantor. The parties entered into discussions about possible ways to satisfy the debt. On December 23, 2004, Builders discussed with Megarity the possibility of deferring interest on the loans until 2005, in return for payment of the principal by December 31, 2004. This was an accommodation to Megarity's desire to refinance or sell the properties in order to obtain the money necessary to satisfy the debt. To that effect, Builders mailed Megarity

payoff letters that did not include any interest amounts in the total due.

On December 30, 2004, the parties discussed a different settlement agreement. The parties differ in their account of this proposed agreement. According to Builders, the new settlement required Megarity to pay on December 30, 2004, all but $75,000 of the principal due, and to execute a new note for $75,000 to cover the remainder of the principal balance. In return, Builders would waive almost $665,000 of the approximately $963,000 in interest and fees it believed were due, and defer the remaining interest until the buildings were ultimately sold. Megarity agrees that he was required to pay the principal on the loans (less $75,000) on December 30, 2004, and that he was to execute a new note for the remaining $75,000. But he contends that in return Builder's agreed to waive all of the interest and fees due on the original loans.

Both parties agree that on December 30, 2004, Builders' CEO, Michael Saywitz, e-mailed Megarity a letter purporting to memorialize the agreement as the bank understood it. All parties also agree that Megarity did not sign this letter, nor did he immediately execute the required $75,000 note. But Megarity did make the required principal payment of almost $13 million, and on January 5, 2005, Builders released the mortgages on the collateral for the original loans.

From this point forward, the parties stories again differ. Builders contends that because Megarity failed to sign the letter agreement and immediately execute the note, it revoked all offers to waive the interest. The bank demanded full payment of all interest and fees and began attempts to collect those funds. Megarity contends that he continued discussions with Builders for the first few weeks in January, and on January 19, 2005, he ultimately executed the new $75,000 note in accordance with the parties' agreement.

Builders filed this suit to collect over $800,000 in interest and fees due. Megarity filed a counterclaim seeking a declaration by the court that the interest and fees on the original loans had been extinguished through novation and that Megarity owed Builders only the principal and interest due on the $75,000 note.

## Analysis

This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Builders is a bank chartered in the state of Illinois. Megarity is a citizen of the state of Texas.

Builders moves for summary judgment on its claim, arguing that when Megarity failed to fulfill the terms of the proposed settlement before December 31, 2004, it revoked the proposed settlement, and thus there could be no novation. Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). Summary judgment is not appropriate "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We may not make credibility determinations, weigh evidence, or decide which inferences to draw from the facts. *Id.* at 255. Instead, we draw all inferences and view all admissible evidence in the light most favorable to the non-moving party. *Id.*

In his countersuit, Megarity alleges that the parties entered into novation, thereby releasing him of his obligations as guarantor of the original loans. Novation occurs when a valid new contract or obligation is created and a valid existing contract or obligation is extinguished. Faith v. Martoccio, 21 Ill. App. 3d 999, 1003-04, 316 N.E.2d 164, 167 (1974). The elements of novation under Illinois law are (1) a previous valid obligation; (2) a subsequent agreement by all of the parties to the new contract; (3) the extinguishment of the old contract;

and (4) the validity of the new contract. First Midwest Bank v. Thunder Road, Inc., 359 Ill. App. 3d 921, 924, 834 N.E.2d 987, 988-89 (2005).

In his affidavit, Megarity explains that in December 2004, he and Saywitz agreed that the principal of the original loans, less $75,000, would be paid on December 30, 2004. Megarity would then execute a new note for $75,000 and, in return, Builders would waive the contract interest, default interest, and fees that were due on the original loans. As support for this version of events, Megarity submits copies of payoff letters from the bank dated December 30, 2004, listing only the principal due less $75,000 and showing no interest due. Further, he provides copies of an internal bank memorandum in which Saywitz authorized the waiver and charge-off of interest on the original loans. These documents, he contends, show that the bank was willing to waive the interest and fees due on the original loan.

On December 30, 2004, Saywitz e-mailed Megarity an unsigned copy of the $75,000 note, and a letter detailing the agreement as Saywitz understood it. The letter included a provision for the bank to recoup some of the interest due on the original loans if the buildings were sold in the near future. Megarity asserts in his affidavit that this was not a part of the agreement as he understood it, and therefore he did not sign the note or the letter. He did, however, pay the required amount of principal on that day.

On January 5, 2005, Megarity received letters from Builders informing him that the proposed settlement had been revoked and that contract interest, default interest and penalties on the original loans was now due. That same day, Builders released the mortgages on the properties. Also on that day, Saywitz e-mailed Megarity and explained, "We sent out some letters Fed Ex to protect the Bank's position . . . I would like you and Michael Zuakerman to work on the issue next week and see if you can come to some resolution along the lines we

spoke of" (Megarity decl. exh. 9). The next week, Megarity received an e-mail from Zuckerman saying, "I think it's in our mutual best interest to bring closure to the outstanding issues remaining . . . and I am available to work with you to make that happen" (Megarity decl. exh. 12). According to Megarity, he and Zuckerman spoke, and then Megarity executed the $75,000 note memorializing the agreement he reached with the bank.

In further support of his position that the parties agreed to a novation, Megarity includes statements he received from the bank in November 2005, May 2006, and July 2006. These statements show a principal balance remaining of $75,000. The only interest due is the interest associated with the January 19, 2005, note. No interest or fees from the original loans appear due on the statements.

Builders argues that the evidence Megarity puts forth in response to summary judgment is actually consistent with its own position that, as a matter of law, no novation took place because the parties never agreed to a new contract. The bank contends that the December 30 payoff letters, and the internal bank memo that reflects no interest due, represent the bank's understanding of the agreement if it were to be executed, but because the agreement was never executed they are not valid and should not be considered. The bank also points out that although it released the mortgages, the documents doing so were careful not to waive any interest and fees that might be due under the loans. The bank also contends that the January e-mail correspondence with Megarity is not an indication that the bank was reversing its position that it revoked the original offer. As for the subsequent statements showing only the $75,000 principal and related interest due, Builders informs the court that these documents are only rate change notices, not comprehensive statements. Further, Builders explains that the notices reflect the original loan date for the Woodland loan, the original maturity date, the

total amount of the original loan, and the December principal payment. According to Builders, the information related to the original Woodland loan demonstrates that it considered the original loan was still open and no novation occurred.

Further, Builders presents its own evidence that no novation occurred. In his affidavit, Saywitz explains that when Megarity failed to execute the note or the letter agreement on December 30, 2004, he revoked the proposed settlement agreement. And Builders submits copies of letters it mailed to Megarity on January 5 and 6, 2005, revoking the proposed agreement and demanding payment of the interest and fees due.

In its reply, Builders encourages the court to "perceive[] what really happened here." In the bank's version of events, Builders released the mortgages despite the fact that Megarity had not executed the note or letter agreement. At that time, Megarity figured that he was off the hook and saw no reason to sign the letter executing the agreement he actually entered into with the bank. Instead, the bank contends that Megarity chose to deny that a deal had been made, and further that he invented a new deal more favorable to him. While this version of events is entirely possible, and indeed may be probable, to arrive at this conclusion requires us to make credibility determinations and inferences in favor of Builders. Summary judgment is therefore improper at this stage.

Intent to create a novation can be implied from the circumstances of a transaction or the subsequent conduct of the parties. Burnett v. W. Madison State Bank, 375 Ill. 402, 410, 31 N.E.2d 776, 780 (1941); Kroll v. Sugar Supply Corp., 116 Ill. App. 3d 969, 974, 452 N.E.2d 649, 653 (1983). It is for the trier of fact to determine from all the facts and circumstances of the case whether the creditor has impliedly agreed to the discharge of the original debt. Phillips and Arnold, Inc. v. Frederick J. Borgesmiller, Inc., 123 Ill. App. 3d 95, 102, 462 N.E.2d

924, 929 (1984). The parties here dispute the meaning and importance of the same documents and allege different stories in their affidavits. We cannot say that Megarity's position that Builders was willing to accept payment of the original principal before the end of 2004, and a $75,000 note in exchange for waiving interest, penalties and fees was so unreasonable that judgment for Builders is required as a matter of law. Thus, summary judgment is inappropriate.

One further matter remains for us to discuss. In its reply to Megarity's response to the motion for summary judgment, Builders asks us alternatively to grant partial summary judgment. The bank argues that Megarity has conceded that he is liable for the $75,000 and the associated interest. Indeed, Megarity has done so (Megarity decl. ¶ 14, exh. 8.) Thus, we grant partial summary judgment in favor of Builders for the principal and interest due on the $75,000 note. We request that Builders calculate the total amount of interest due on the $75,000 note and prepare a draft order in accordance with this opinion.

JAMES B. MORAN
Senior Judge, U. S. District Court

Sept. 28, 2007.